UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISIDRO MUNOZ ARREDONDO, ) <br> ) <br> Petitioner, ) <br> ) No. 25-cv-12882 <br> v. ) <br> ) Judge April M. Perry <br> SAM OLSON, Field Office Director of ) <br> Enforcement and Removal Operations, ) <br> Chicago Field Office, Immigration and ) <br> Customs Enforcement, and KERRY J. ) <br> FORESTAL, Sheriff, Marion County Jail, ) <br> ) <br> Respondents. ) <br> ) | |

## OPINION AND ORDER

Isidro Munoz Arredondo ("Petitioner"), a citizen of Mexico, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241. On October 21, 2025, Petitioner was arrested outside of his home in Bolingbrook, Illinois, and was detained at the Broadview Processing Center, a federal detention facility located in Broadview, Illinois. No bond hearing has been held to determine whether Petitioner is a flight risk or danger to others. Petitioner has been in the United States since at least 2000 and has been employed at a fast food restaurant for the last twenty years. Petitioner has one child who is a United States citizen. He has no known criminal history. This petition, brought against officers and agencies (collectively, "Respondents")[1]

---

[1] The petition names "Warden Doe, Warden of Broadview Processing Center" as one of the Respondents, but Respondents have indicated that Petitioner is currently housed at the Marion County Jail in Indianapolis, Indiana. *See* Doc. 7 at 2. The "default rule is that the proper respondent is the warden of the facility where the prisoner is being held," and that "the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022), quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). This rule ensures that "the objective of habeas relief be in no way impaired or defeated

involved in the enforcement of federal immigration laws, challenges the lawfulness of his detention.

For the following reasons, the petition for a writ of habeas corpus is granted.

## ANALYSIS

A district court may grant a petitioner's request for a writ of habeas corpus if the petitioner demonstrates that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Petitioner contends that Respondents are holding him unlawfully, in violation of both the Immigration and Nationality Act ("INA") and his Fifth Amendment due process rights. Petitioner asks the Court to issue a writ ordering Respondents to release him from custody or, in the alternative, to provide Petitioner with a bond hearing.

Respondents argue that the Court should not reach the merits of this petition for two reasons.[2] First, Respondents argue that 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii) strip this Court of jurisdiction to hear this matter. Second, Respondents argue that Petitioner failed to exhaust his administrative remedies. The Court disagrees on both fronts.

Beginning with Respondents' first argument: it is true that the INA in certain instances limits the jurisdiction that district courts may exercise. For example, 8 U.S.C. § 1252(g) states that no court "shall have jurisdiction to hear any cause or claim by or on behalf of any alien

---

by the removal of the prisoner from the territorial jurisdiction of the District Court." *Rumsfeld*, 542 U.S. at 441 n. 14 (cleaned up). The Court therefore removes from the case caption "Warden Doe" of the Broadview Processing Center, as well as Pamela Bondi, Kristi Noem, the U.S. Department of Homeland Security, and the Executive Office for Immigration Review. Sheriff Kerry J. Forestal and Sam Olson, Field Office Director of Enforcement and Removal Operations, Chicago Field Office will be the Respondents responsible for effectuating the relief ordered by the Court.

[2] To put a finer point on it: Respondents have adopted and attached to their filing their arguments submitted in the case of *H.G.V.U. v. Smith*, 25 CV 10931 (N.D. Ill.). See Doc. 11-1 at 20–52. Respondents acknowledge that the *Smith* court did not adopt these arguments.

2

arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). This "statute does not sweep broadly; only challenges to the three listed decisions or actions … are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). The "decision to confine" a noncitizen is not one of these three enumerated decisions. *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000); *see also Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) (rejecting argument that Section 1252(g) covers all claims arising from deportation proceedings as "implausible"). In this case, Petitioner challenges only the lawfulness of his detention without a bond hearing, not the commencement of proceedings, adjudication of his case, or execution of any removal order. Thus, Section 1252(g) does not prevent this Court from hearing Petitioner's case.

Similarly, 8 U.S.C. § 1252(b)(9), which designates the federal Courts of Appeal as the exclusive forum for "judicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States," does not apply in this case. 8 U.S.C. § 1252(b)(9). In *Jennings v. Rodriguez*, the Supreme Court held that this section only presents a jurisdictional bar to petitioners "asking for review of an order of removal," "the decision to detain them in the first place or to seek removal," or "the process by which their removability will be determined." 583 U.S. 281, 294–95 (2018). Here, Petitioner is not challenging an order of removal, a decision ordering him detained, or the process governing how his removability will be determined. Rather, Petitioner is challenging the absence of any individualized detention decision or procedure in his case. Section 1252(b)(9) is therefore inapplicable.

Finally, Respondents invoke 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes district court review of decisions by the Attorney General or Secretary of Homeland Security "the authority for which is specified under this subsection to be in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). This provision also does not apply to this case. As is explained below, Petitioner challenges whether Respondents have legal authority to hold him in custody without a bond hearing. Thus, Petitioner's challenge goes to the extent of the government's statutory detention power, which is "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

The Court also rejects Respondents' argument that Petitioner cannot seek habeas relief before first requesting a bond hearing from the Board of Immigration Appeals ("BIA"). "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs" whether to impose it as an obstacle to federal suit. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Courts decline to require exhaustion if "appealing through the administrative process would be futile because the agency … has predetermined the issue." *Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Here, requiring Petitioner to ask the BIA for a bond hearing would be futile given BIA's recent conclusion that it "lack[s] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). The Court concludes exhaustion is not a bar to Petitioner's case.

Having resolved Respondents' threshold challenges, the Court turns to the merits. Petitioner contends habeas relief is warranted for two reasons. First, he argues his detention by Respondents violates the INA, as noncitizens already in the United States when detained are

4

entitled to a bond hearing. Second, he argues his detention is unlawful because by not providing him a bond hearing, Respondents have violated Petitioner's constitutional right to due process.

The Court begins with the argument that Petitioner's detention without a bond hearing violates the INA. The ability to detain noncitizens pending removal is set forth in 8 U.S.C. §§ 1225 and 1226. Petitioner contends his detention is governed by Section 1226(a), which allows for a bond hearing before the prolonged detention of noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. At that hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019). In contrast, Respondents insist Petitioner was detained pursuant to Section 1225(b)(2)(A), which mandates detention of a noncitizen who "is an applicant for admission" into the United States if "an immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

The Court does not agree with Respondents that Section 1225(b)(2)(A) applies to all noncitizens, irrespective of how long they have been present in the United States or whether they have formally sought legal status in the United States.[3] Joining the chorus of other courts to have considered this argument,[4] the Court rejects Respondents' interpretation that Section 1225(b)(2)(A) applies to those like Petitioner who are found in the United States on grounds that it "(1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between

---

[3] There is no indication that Petitioner has taken active steps to seek legal admission to the United States.

[4] *See, e.g.*, *Corona Diaz v. Olson,* 2025 WL 3022170, at *4–5 (N.D. Ill. Oct. 29, 2025); *Miguel v. Noem*, 2025 WL 2976480, at *4–5 (N.D. Ill. Oct. 21, 2025); *Ochoa Ochoa v. Noem et al.*, 2025 WL 2938779, at *5 (N.D. Ill. Oct. 16, 2025); *Alejandro v. Olson*, 2025 WL 2896348, at *6 (S.D. Ind. Oct. 11, 2025).

§§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Alejandro v. Olson*, 2025 WL 2896348, at *6 (S.D. Ind. Oct. 11, 2025). Consistent with the reasoning of the *Alejandro* court and the many others which have joined it, the Court concludes that Section 1226(a)—not Section 1225(b)(2)(A)—governs Petitioner's case.

Because Respondents' authority to detain Petitioner arises from Section 1226(a), Petitioner's detention is discretionary, not mandatory. Moreover, Petitioner is entitled to the protections of the Due Process Clause when that discretionary detention decision is made. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). To determine whether a governmental decision violates the Due Process Clause, courts consider "the private interest that will be affected," "the risk of an erroneous deprivation of such interest through the procedures used," and "the Government's interest, including the function involved and the fiscal and administrative burdens that … the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). These constitutional protections extend to noncitizens because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas,* 533 at 693.[5]

---

[5] In similar cases, Respondents invoked *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) to argue unadmitted noncitizens are "applicants for admission" and therefore possess fewer due process rights. But that case involved a habeas petitioner detained twenty-five yards from the border and "shortly after unlawful entry." *Id*. at 140. On these facts, the Supreme Court concluded that the petitioner had not yet "effected an entry" that would entitle him to the Constitution's full due process protections. *Id*., citing *Zadvydas*, 533 U.S. at 693 (drawing "distinction between an alien who has effected an entry into the United States and one who has never entered"). No similar entry argument can be made about Petitioner, who entered the United States at least twenty-five years ago.

The Court finds Petitioner has a substantial private interest in securing his release from custody or, short of that, an individualized bond hearing regarding his detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."). The Court finds further that Respondents' decision to detain Petitioner without a bond hearing to assess whether he is a flight risk or danger to the community raises a severe risk of erroneous deprivation of Petitioner's rights.[6] And the Court concludes that Respondents' interest in depriving Petitioner of a hearing is minimal. Accordingly, the Court finds that Petitioner's detention without a hearing violates not only the INA but Petitioner's Fifth Amendment due process rights as well, which entitles him to a writ of habeas corpus.

## CONCLUSION

Petitioner's petition for a writ of habeas corpus is granted. Within seven days of issuance of this Order, Respondents must either release Petitioner from custody, under reasonable conditions of supervision, or afford Petitioner a bond hearing under 8 U.S.C. § 1226(a). Because this order provides the full relief to which Petitioner is entitled, the Clerk shall enter a final judgment order in favor of Petitioner and terminate this civil case.

Dated: November 7, 2025

_____
APRIL M. PERRY
United States District Judge

---

[6] The Court notes that Petitioner has established roots in Illinois, having been here for at least twenty-five years, holding a job for twenty years, and being the father of a child who is a United States citizen. The Court further notes that it appears Petitioner has no criminal history. These factors indicate that it is by no means a likely conclusion that Petitioner is a risk of flight or danger to the community.